13-3556

---

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

PATRICIA FREEMAN,

Appellant,

v.

WYETH, ET AL.,

Appellees.

---

Appeal from the United States District Court,
Eastern District of Arkansas – Western Division,
the Honorable Billy Roy Wilson, United States District Court Judge

---

**Brief for Appellant Patricia Freeman**

---

Kahn Gordon Timko & Rodriques, P.C.
By: Nicholas I. Timko
*Attorneys for Appellant*
20 Vesey St., Suite 300
New York, NY 10007
(212) 233-2040
nitimko@kgtrpc.com

Appellate Case: 13-3556    Page: 1    Date Filed: 01/08/2014 Entry ID: 4111771

## SUMMARY OF THE CASE

Appellant, one of thousands of plaintiffs in multidistrict product liability litigation transferred to the Eastern District of Arkansas, was never served with notice of a motion to dismiss. Appellant did not receive (1) the district court's November 16, 2012, order directing the completion of an updated medical authorization form; or (2) Appellees' motion to dismiss stemming from Appellant's failure to provide the authorization form in time to prevent dismissal by the district court on January 28, 2013.

The district court's January 28, 2013, order was an abuse of discretion because dismissal was a harsh, disproportionate punishment for failing only to provide a medical authorization that had been provided previously when requested by other means. Furthermore, the district court, in its October 30, 2013, order denying Appellant's motion to vacate the dismissal, failed to properly evaluate evidence that Appellant, through multiple failures that were not her own, did not receive notice of the proceedings.

Appellant requests oral argument.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE .................................................................. i

TABLE OF CONTENTS .................................................................... ii

TABLE OF AUTHORITIES.............................................................. iii

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................2

STATEMENT OF THE CASE .............................................................3

SUMMARY OF ARGUMENT............................................................7

ARGUMENT ................................................................................8

  I.   THE UNDERLYING DISMISSAL SHOULD BE VACATED BECAUSE APPELLANT, THROUGH NO FAULT OF HER OWN, WAS NOT PROPERLY SERVED WITH NOTICE........................................................8

    A.  Lack of notice justifies examination of the underlying judgment's merits ..9

    B.  Providing notice was the explicit responsibility of liaison counsel............12

  II.  THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING AN UNJUSTIFIED, DISPROPORTIONATE SANCTION .......................12

  III.  THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO CONSIDER WHETHER APPELLANT DEMONSTRATED EXCUSABLE NEGLECT IN THE MOTION TO VACATE .............................................22

  IV.  CONCLUSION ........................................................................25

CERTIFICATE OF COMPLIANCE ....................................................28

ANTI-VIRUS CERTIFICATION .......................................................29

Appellate Case: 13-3556    Page: 3    Date Filed: 01/08/2014 Entry ID: 4111771

# TABLE OF AUTHORITIES

## Cases

*Cavalliotis v. Salomon*, 357 F.2d 157 (2d Cir. 1966)..................................9

*Chorosevic v. MetLife Choices*, 600 F.3d 934 (8th Cir. 2010)..............................21

*Clayton v. White Hall School Dist.*, 778 F.2d 457 (8th Cir.1985)..........................12

*Dondi Props. Corp. v. Commerce Savings & Loan Ass'n, 121 F.R.D. 284 (N.D. Tex. 1988)*..................................................................24

*Feeney v. AT & E, Inc.*, 472 F.3d 560 (8th Cir. 2006) ...........................................23

*Fletcher v. Southern Farm Bureau Life Ins. Co.*, 757 F.2d 953 (8th Cir.1985)......13

*Fox v. Am. Airlines, Inc.*, 389 F.3d 1291 (D.C. Cir. 2004) ....................................10

*General Electric Co. v. Joiner, 522 US 136 (1997)* ..........................................13, 24

*Givens v. A.H. Robins Co., Inc.*, 751 F.2d 261 (8th Cir. 1984)........................12, 13

*Good Stewardship Christian Ctr.*, 341 F.3d 794 (8th Cir. 2003)............................13

*Harley v. Zoesch*, 413 F.3d 866 (8th Cir. 2005)..............................................12, 21

*Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524 (8th Cir. 2000) ........................13

*Industrial Building Materials, Inc. v. Interchemical Corp.*, 278 F.Supp. 938 (C.D.Cal.1967) .........................................................................12

*Jensen v. Klecker*, 702 F.2d 131 (8th Cir. 1983)......................................................8

*Jinks v. Allied Signal, Inc.*, 250 F.3d 381 (6th Cir. 2001) .....................................22

*Klapprott v. United States*, 335 U.S. 601 (1949)......................................................9

*Lord v. Helmandollar*, 348 F.2d 780 (1965), cert. denied, 383 U.S. 928 (1966)…………………………………………………………………….……… 9

*Newport v. Revyuk*, 303 F.2d 23 (8th Cir. 1962)....................................................12

Appellate Case: 13-3556    Page: 4    Date Filed: 01/08/2014 Entry ID: 4111771

*Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074 (7th Cir.1997)..................10

*Pierre v. Bernuth, Lembcke Co.*, 20 F.R.D. 116 (S.D.N.Y.1956) .............................9

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ...21, 22

*Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538 (2d Cir. 1963) .............9

*Robinson v. Wix,* 599 F.3d 403 (4th Cir. 2010)........................................................10

*Rodgers v. Curators of Univ. of Missouri*, 135 F.3d 1216 (8th Cir. 1998) .............14

*Sahyers v. Prugh, Holliday & Karatinos*, P.L., 560 F.3d 1241 (11th Cir. 2009)....24

*Smith v. Gold Dust Casino*, 526 F.3d 402 (8th Cir. 2008) ......................................13

*Societe Internationale, etc. v. Rogers*, 357 U.S. 197 (1958) ...................................13

*Sterling v. United States*, 985 F.2d 411 (8th Cir. 1993) ..........................................12

*Union Pac. R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781 (8th Cir. 2001)....23

*United States ex rel. McAllan v. City of New York*, 248 F.3d 48 (2d Cir.2001)......10

*Welsh v. Automatic Poultry Feeder Co.*, 439 F.2d 95 (8th Cir. 1971)....................13

*Wilton v. Seven Falls Co.*, 515 US 277 (1995) (6th Cir. 2012)........................13, 24

*Yeschick v. Mineta*, 675 F.3d 622 (6th Cir. 2012)...................................................10

**Statutes**

28 U.S.C. § 1291 .........................................................................................................1

**Rules**

*F.R.A.P. 5* ............................................................................................................10, 19

*F.R.A.P. 25* ..............................................................................................................10

*F.R.C.P. 41* ..............................................................................................................12

*F.R.C.P. 60* .........................................................................................................9, 20

Appellate Case: 13-3556   Page: 5   Date Filed: 01/08/2014 Entry ID: 4111771

# JURISDICTIONAL STATEMENT, *F.R.A.P.* 28(a)(4)

(A)      This matter was originally filed in the Supreme Court of the State of New York, County of New York and subsequently removed to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1332, 1441, and 1446. The matter was transferred to the Eastern District of Arkansas pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 *F.R.D.* 425, 435-36 (2001).

(B)      This Court has jurisdiction over this appeal as a matter of right under *F.R.A.P.* 3. and 28 U.S.C. § 1291, which empower this Court to hear appeals from final decisions of the district courts of the United States, including the District Court for the Eastern District of Arkansas.

(C)      This is an appeal from a final order entered by the district court on October 30, 2013, denying Appellant's motion to vacate the district court's January 28, 2013, order of dismissal. The notice of appeal was filed on November 19, 2013, and the briefing schedule set by this Court on November 26, 2013, established January 6, 2014, as the deadline for Appellant's brief.

Appellate Case: 13-3556     Page: 6     Date Filed: 01/08/2014 Entry ID: 4111771

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Because Appellant never received notice of the district court proceedings

leading to dismissal, should the Court examine the underlying dismissal?

- *Lord v. Helmandollar, 348 F.2d 780 (1965), cert. denied, 383 U.S. 928 (1966)*
- *Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074 (7th Cir.1997)
- *Robinson v. Wix,* 599 F.3d 403 (4th Cir. 2010)
- *Yeschick v. Mineta*, 675 F.3d 622 (6th Cir. 2012)

2.  Did the district court abuse its discretion by improperly dismissing

Appellant's case in its January 28, 2013, order?

- *Givens v. A.H. Robins Co., Inc.*, 751 F.2d 261, 263 (8th Cir. 1984)
- *Grunewald v. Missouri Pacific Railroad Co.*, 331 F.2d 983 (8th Cir. 1964)
- *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005)
- *Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962)

3.  Did the district court abuse its discretion by improperly denying Appellant's

motion to vacate the January 28, 2013, dismissal without sufficient evidence and

despite evidence that Appellant had not been given adequate notice of the

proceedings leading to dismissal?

- *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

Appellate Case: 13-3556    Page: 7    Date Filed: 01/08/2014 Entry ID: 4111771

## STATEMENT OF THE CASE

Plaintiff-Appellant Patricia Freeman ("Appellant") is a 71-year-old woman who was prescribed Prempro, a menopause drug produced by Defendants-Appellees Wyeth and Wyeth, Inc. ("Appellees"). Prempro was the subject of extensive litigation in many jurisdictions dating back to about 2003, alleging that the drug caused cancer in women.

Appellant initiated the underlying matter via e-filed Verified Summons and Complaint on February 11, 2009, in the Supreme Court of the State of New York, County of New York. The action alleged, like the related lawsuits, that Prempro caused her breast cancer that necessitated radiation and a double mastectomy. On March 27, 2009, Appellees removed this case to the United States District Court for the Southern District of New York. Shortly thereafter, on April 1, 2009, the undersigned entered a notice of appearance via the Southern District of New York CM/ECF electronic filing system ("CM/ECF") that designated three firm e-mail addresses where notifications were to be sent. *Appellant Appendix, 2G* at p. 106. On or about April 22, 2009, Appellant submitted a Plaintiff's Fact Sheet. *Appellant Appendix, 2G* at p. 110.

Because of the underlying action's similarities to Prempro litigation pending in other jurisdictions, it was categorized as a "tag-along" case and transferred to the United States District Court for the Eastern District of Arkansas via Conditional

3

Transfer Order dated May 13, 2009. *Appellant Appendix, 2B* at p. 78. The order instructed plaintiffs' liaison counsel and defense liaison counsel to receive orders and notices and transmit them to individual counsel. At the time, plaintiffs' liaison counsel was Gary Holt, Esq., though he was replaced by Ralph Cloar, Esq. sometime in early 2013. Accompanying the order was a letter from the Court's Clerk instructing counsel to register separately for CM/ECF with the Eastern District of Arkansas. *Ibid.* The transmission of important orders and notices by plaintiffs' liaison counsel, as mandated by the district court's order, *Appellant Appendix 1A*, para. 8.2.2(b) at p. 9, was not completed.

This included the initial order instructing individual counsel to register separately for CM/ECF in the Eastern District of Arkansas. Appellant, having not received the notice regarding additional registration in the Eastern District of Arkansas, was under the mistaken belief that CM/ECF registration in the Southern District of New York was sufficient, and that notice would be received by virtue of the matter's transfer.

Between the date of transfer on May 13, 2009, and November 16, 2012, there was no activity on Appellant's individual docket, 4:09-cv-00356, including notices of any kind sent by plaintiffs' liaison counsel to Appellant. During that time, the undersigned monitored the docket. *See, e.g., Appellant Appendix, 2G* at p. 150.

4

The only communications regarding the case were made by mail from Appellees. On July 12, 2010, Appellant received a demand for updated medical authorizations and, on July 20, 2010, promptly returned completed copies. *Appellant Appendix, 2G* at p. 170. On December 10, 2010, Appellees sent a letter regarding Appellant's delinquency in sending an updated plaintiff fact sheet with a copy to plaintiffs' liaison counsel. *Appellant Appendix, 2G* at p. 155. Appellant complied by mail a few days thereafter. *Appellant Appendix, 2G* at p. 161[1]. At no point during this timeframe did plaintiffs' liaison counsel communicate any deficiencies to Appellant.

About three years after this matter's transfer to the Eastern District of Arkansas, the district court issued a general order instructing hundreds of plaintiffs, including Appellant, to submit updated medical authorizations within three weeks of the order. *Appellant Appendix, 2C* at p. 83. The undersigned not having been registered for CM/ECF in the Eastern District of Arkansas and plaintiffs' liaison counsel having failed to transmit the district court's order, Appellant did not receive notice of the district court's order. Despite defense counsel's knowledge that there was no CM/ECF registration for Appellant's counsel of record, and apparently for other tag-along plaintiffs, defense counsel made a deliberate choice

---

[1] Insofar as specific medical records are voluminous and irrelevant to this appeal, they have been omitted. The records can be submitted upon the Court's request.

Appellate Case: 13-3556    Page: 10    Date Filed: 01/08/2014 Entry ID: 4111771

not to continue serving counsel by other means, thus knowingly permitting the court to enter dismissal orders without notice to Appellant.

On January 8, 2013, Appellees moved to dismiss the underlying action via an e-filed motion that was e-mailed separately, but only to plaintiffs' liaison counsel. *Appellant Appendix, 2D,E* at p. 90, 92. Again, Appellant did not receive notice of the motion. Once again, defense counsel deliberately chose not to serve primary counsel in any way despite knowledge of the absence of CM/ECF registration. On January 28, 2013, the district court granted Appellees' motion and the matter was dismissed. *Appellant Appendix, 2F* at p. 95. Plaintiffs' liaison counsel did not communicate the dismissal to Appellant, nor did Appellant receive e-mailed notification via CM/ECF or any other communication from defense counsel.

The undersigned did not learn of the dismissal until a file audit in early October of 2013. On October 22, 2013, Appellant filed a Motion to Vacate the district court's dismissal, which was opposed by Appellees. *Appellant Appendix, 2G-J* at p. 96-214. The district court denied the motion shortly thereafter, on October 30, 2013. *Appellant Appendix, 2K* at p. 221. This appeal was timely filed shortly thereafter, on November 19, 2013.

6

## SUMMARY OF ARGUMENT

Though this Court would normally review only the district court's order denying Appellant's *F.R.C.P.* 60 motion, the unique circumstances of this case dictate that the ends of justice would only be achieved by examining the underlying dismissal, which occurred without any notice to Appellant. Lack of notice being anathema to our judicial system, the underlying dismissal should be vacated as an abuse of discretion and an unduly harsh sanction.

In the alternative, this Court should nevertheless find an abuse of discretion in the district court's denial of Appellant's motion to vacate. The district court, by its own admission, concluded without sufficient evidence that Appellant had, or should have had, notice of the proceedings leading to dismissal. There is a significant volume of evidence to suggest, however, that this is not the case and that Appellant should not be denied her day in court because of events which were not her fault.

Consequently, the Court should (1) vacate and invalidate the district court's January 28, 2013, order granting Appellees' motion to dismiss and reinstate the matter to the district court's docket; or (2) vacate and invalidate the district court's October 30, 2013, denial of Appellant's motion to vacate the January 28, 2013, order and/or (3) vacate the dismissal and reinstate the matter to the district court docket.

7

# ARGUMENT

## I. THE UNDERLYING DISMISSAL SHOULD BE VACATED BECAUSE APPELLANT, THROUGH NO FAULT OF HER OWN, WAS NOT PROPERLY SERVED WITH NOTICE

This Court has previously held that when a party makes an appeal that is timely from a Rule 60(b) decision but untimely from the judgment itself, this Court has the authority only to review the 60(b) motion and not the underlying issue. *Jensen v. Klecker*, 702 F.2d 131 (8th Cir. 1983).

However, the two are difficult to extricate because they are tied together by fundamental notions of fairness – that is, a litigant cannot defend against matters of which they have no notice. Because of the complex nature of multidistrict litigation that spanned over a decade and included thousands of plaintiffs, the role of plaintiffs' liaison counsel and proper service were particularly crucial.

The dismissal here occurred because Appellant was, through no willful or malicious action, unaware of the underlying discovery order or dismissal motion and order, meaning that a timely objection could not be filed. There is evidence, left unexamined by the district court, that plaintiffs' liaison counsel neglected their duty to notify individual plaintiffs and that Appellees abused discovery tools to seek dismissal of meritorious claims on procedural grounds. Once the dismissal was brought to Appellant's attention, a 60(b) motion was immediately filed.

8

## A.  Lack of notice justifies examination of the underlying judgment's merits

Once a party makes an appearance in an action, he is entitled to notice of all proceedings taken in that action thereafter, *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 541-42 (2d Cir. 1963) (citation omitted), and failure to provide notice can support a finding of extraordinary circumstances justifying a dismissal's reversal. *Cavalliotis v. Salomon*, 357 F.2d 157, 159 (2d Cir. 1966).

This is true even when significant time has elapsed between the dismissal and associated motion to vacate. For example, the Second Circuit has found that an eighteen month delay was not unreasonable where there was sufficient evidence to find a lack of notice, particularly in the presence of the "knowing silence of the defendants and their counsel." *Cavalliotis*, 357 F.2d at 159; see also *Klapprott v. United States*, 335 U.S. 601(1949) (over four years had passed); *Radack,* 318 F.2d at 541-42 (fifteen months); *Pierre v. Bernuth, Lembcke Co.*, 20 F.R.D. 116 (S.D.N.Y.1956) (over three years).

Geographic separation, evident here and exacerbated by the number and variety of plaintiffs, can also be a significant factor to consider. For example, in *Lord v. Helmandollar*, the United States Court of Appeals for the District of Columbia held that where local counsel received notice of the entry of judgment but out-of-state counsel did not, the time to appeal could be extended under *F.R.C.P.* 60(b). 348 F.2d 780 (1965), cert. denied, 383 U.S. 928 (1966).

9

Several Courts have found that attorneys have an affirmative duty to monitor the docket. See, e.g., *Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012); *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004); *Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074, 1075 (7th Cir.1997); *United States ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2d Cir.2001); *Robinson v. Wix,* 599 F.3d 403 (4th Cir. 2010).

However, the duty to monitor "is antithetical to our notice-based adversarial system." *Robinson,* 599 F.3d at 422 (J. Davis, dissenting). *F.R.C.P.* 5 requires service of papers, including "a written motion," upon the attorney, by handing it to the person, leaving it at the person's office, mailing it to the person's last known address, or mailing it by electronic means. (b)(1); (b)(2)(A); (b)(2)(B)(i); (b)(2)(C); (b)(2)(E).

The plain language of *F.R.C.P.* 5(b)(2)(E) makes it clear that electronic service "is not effective if the serving party learns that it did not reach the person to be served." Here, Appellees had reason to know that Appellant never received notice of court proceedings or motions. Whenever a document is filed via CM/ECF, the filer receives confirmation that notice was sent to the other parties. See, e.g., *Appellant Appendix 2G* at p. 107. Each time Appellees filed a document to Appellant's individual docket, Appellee would have been on notice of defective service based on the conspicuous absence of Appellant from the service list. This is

10

reflected in the fact that Appellees' certificate of service listed plaintiffs' liaison counsel, but did not list Appellant as having been served. Appellees would have known, in other words, that their motion to dismiss had never reached Appellant. Thus, service was never actually effectuated and the motion should have been denied as improperly served.

Even if the burden is on Appellant to demonstrate that service was never effected, a motion to modify a judgment asserting that electronic filing was never completed – regardless of when the motion is made – should defeat attempted service. The Advisory Committee Notes to the 2001 Amendments to *F.R.C.P.* 5 explain that the electronic service caveat, which was initially contained in Rule 5(b)(3), defeats service by electronic means if the party making service learns that the attempted service did not reach the person to be served. *Ibid.* Notably, there is no time limit on when that notification must be made.

Appellant's Motion to Vacate filed on January 28, 2013, *Appellant Appendix, 2G* at p. 96*, certified that Appellee's Motion to Dismiss, *Appellant Appendix, 2D* at p. 90, had never been received, which should negate any attempted service. Furthermore, defense counsel's knowledge of Appellant's contact information and deliberate choice not to serve them individually should defeat attempted service here and allow for reconsideration of the district court's dismissal.

11

**B.     Providing notice was the explicit responsibility of liaison counsel**

Moreover, as discussed more fully below, should this Court find an affirmative duty to monitor the docket, plaintiffs' liaison counsel assumed that duty. As the title indicates, plaintiffs' liaison counsel was meant to serve an important purpose: to provide notice of relevant and important documents and events to each incoming plaintiff entering an unfamiliar, foreign jurisdiction with thousands of documents and dozens of case-specific orders in place.

Without the aid of plaintiffs' liaison counsel – the exact circumstance encountered by Appellant – individual plaintiffs whose cases are transferred to the Eastern District of Arkansas are left to decipher a docket consisting of, as of late 2013, about 3,000 numbered docket entries accompanied by a significant number of unnumbered entries. *See* Docket 4:03-cv-1507. Plaintiffs' liaison counsel's failure to fulfill its court-ordered duty should qualify as an exceptional circumstance justifying a finding that Appellant never had notice of the events leading to dismissal and should therefore not be bound by its harsh effects.

**II.     THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING AN UNJUSTIFIED, DISPROPORTIONATE SANCTION**

There is little doubt that a trial court has the power to dismiss an action for failure to prosecute or for refusal to comply with orders of court. See, e.g., *Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962); *Grunewald v. Missouri Pacific Railroad Co.*, 331 F.2d 983 (8th Cir. 1964); *Newport v. Revyuk*, 303 F.2d 23 (8th

12

Cir. 1962); *Industrial Building Materials, Inc. v. Interchemical Corp.*, 278 F.Supp. 938 (C.D.Cal.1967); *F.R.C.P.* 41. That dismissal, and the district court's decision to deny a Rule 60(b) motion stemming therefrom, will be reversed only for an abuse of discretion. *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005). A judgment will be termed an abuse of discretion if the adjudicator has failed to exercise sound, reasonable, and legal decision-making skills. See, e.g. *Wilton v. Seven Falls Co.*, 515 US 277 (1995) and *General Electric Co. v. Joiner*, 522 US 136 (1997).

An abuse of discretion has been found where the punishment does not fit the crime. *Givens v. A.H. Robins Co., Inc.*, 751 F.2d 261, 263 (8th Cir. 1984). Dismissals with prejudice are "drastic and extremely harsh sanction[s]." *Clayton v. White Hall School Dist.*, 778 F.2d 457, 460 (8th Cir.1985); *Sterling v. United States*, 985 F.2d 411, 412 (8th Cir. 1993). Cases should be dismissed with prejudice for inaction only where the plaintiff has intentionally delayed the action, *Fletcher v. Southern Farm Bureau Life Ins. Co.*, 757 F.2d 953, 956 (8th Cir.1985) (*per curiam*), or where the plaintiff has consistently and willfully failed to prosecute his claim. *Givens*, 751 F.2d at 263.

Willful, as used in the context of a failure to comply with a court order or failure to prosecute, implies a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance and no wrongful

13

intent need generally be shown. See *Societe Internationale, etc. v. Rogers*, 357 U.S. 197 (1958). Examples of such conduct include not filing six years after the subject incident, repeated failures to meet discovery deadlines, filing copious interrogatories as a delay tactic, lack of preparation for trial despite nine months' notice and several months of adjournments. *Welsh v. Automatic Poultry Feeder Co.*, 439 F.2d 95, 97 (8th Cir. 1971); *Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008); *Good Stewardship Christian Ctr.*, 341 F.3d 794, 796 (8th Cir. 2003) (holding dismissal with prejudice warranted when the record showed that plaintiff's conduct which included making several ex parte statements in violation of a district court order, making numerous baseless motions for sanctions against opposing counsel, failing to properly answer requests for admissions, and obstructing discovery during depositions, was designed to delay proceedings); *Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527-8 (8th Cir. 2000) (holding dismissal with prejudice warranted when between the issuance of the pretrial order and the date trial was set to commence, the litigant "engaged in at least six distinct violations of the court's orders or of the Federal Rules"); *Rodgers v. Curators of Univ. of Missouri*, 135 F.3d 1216, 1217 (8th Cir. 1998) (holding dismissal with prejudice warranted when the litigant failed to appear at two court ordered depositions, disregarded the district court's order to produce certain material

14

documents, and violated a court order prohibiting him from firing his fourth set of counsel).

Willful obstruction sufficient to justify dismissal, as defined by this Court, is substantially more egregious than what occurred in this instance. Here, plaintiffs' liaison counsel's failure, in violation of the district court's orders and its explicit duty, to inform Appellant of significant events and motions, resulted in Appellant's mistaken belief that a separate CM/ECF registration was not required to receive notice. Then, Appellees, rather than notify Appellant of the error, sought to take advantage of the error by filing demands and motions which they knew would go unanswered. Appellees' decision not to serve Appellant knowing that they were not registered for CM/ECF, not Appellant's harmless error, can be characterized as willful obstruction.

In the first phases of this litigation in 2003, well before Appellant's case was transferred, Practice and Procedure Order 1 outlined plaintiffs' liaison counsel's explicit duty to incoming counsel: "Plaintiffs' liaison counsel will provide a copy to incoming counsel of all Orders [on the main docket] regarding practice and procedures in this Court." *Appellant Appendix 1A,* para 2.7 at p.4. Further, plaintiffs' liaison counsel was ordered to, among other things, "receive and, as appropriate, distribute to co-counsel orders from the Court and documents from opposing parties and counsel." *Appellant Appendix 1A,* para. 8.2.2(b) at p. 9. In

15

consideration of these duties, plaintiffs' liaison counsel would receive compensation out of litigation proceeds. *Appellant Appendix 1A,* para. 8.3.3 at p. 9. However, this Order was not provided to Appellant by plaintiffs' liaison counsel.

Practice and Procedure Order 3 addressed the initial mechanism by which delinquent discovery was to be addressed: a warning letter and, if no response was received, a subsequent Order to Show Cause. *Appellant Appendix 1B,* para. 1 at p. 22. This Order was also not provided to Appellant by plaintiffs' liaison counsel.

In 2007, Appellees filed the first of many motions to dismiss based on the failure to provide medical authorizations. The Plaintiffs' Steering Committee, of which the plaintiffs' liaison counsel is a member, objected to Appellees' motion. In accordance with their duty under the Practice and Procedure Orders cited above, the Steering Committee informed individual counsel of the delinquency and attempted to meet Appellee's demands. That diligence did not, unfortunately, manifest itself in the case of Appellant.

Equally troubling, however, are the accusations contained within the Steering Committee's opposition that reveal a pattern of conduct designed at obstruction. These actions include: (1) the refusal of defense counsel to provide an extension for a *pro se* plaintiff whose attorney, unbeknownst to her, had been disbarred; *Appellant Appendix 1C,* para. 2 at p. 27. (2) defense counsel unnecessarily demanding multiple medical authorizations, *Appellant Appendix 1C,* para. 4 at p.

16

29; and (3) defense counsel requesting the severest sanction of dismissal rather than what had been authorized by the district court. *Appellant Appendix 1C,* paras. 4,6 at 29.

About two years later, Appellees filed a motion requesting a deadline for the return of updated authorizations, *Appellant Appendix 1D*, p. 32, which was also mailed to the Plaintiffs' Steering Committee and plaintiffs' liaison counsel. The Steering Committee, clearly frustrated by what it viewed as dilatory conduct, noted that despite Appellee's insistence upon the inclusion of medical authorizations, Appellees had not used those authorizations to order records. *Appellant Appendix 1E* at p. 44 . Instead, they allowed those authorizations to sit unused until new ones were necessary, at which point the failure to promptly respond to requests for updated authorizations were used as a basis for dismissal.

As early as 2009, it would appear that failure to provide notice to individual plaintiffs was less an inadvertent oversight than calculated litigation strategy. As noted by the Steering Committee,

> despite [the district court's] clear orders in PPO 1 that for all 'case specific filings, service must also be made upon counsel for plaintiff(s) in that case' (), [Appellees] served only the Plaintiffs' Steering Committee. *** Lead Counsel asked [Appellees] to provide the names and contact information for the lawyers representing each plaintiff identified in its motion, so that the PSC could discuss this issue with each lawyer. Wyeth refused to provide any information about who represented these plaintiffs. *** What Lead Counsel can confirm is that not one of the attorneys reached were even aware of Wyeth's Motion (other than PSC members).

17

[*Appellant Appendix 1E* at p. 44.]

The Steering Committee also found that multiple plaintiffs alleged to have been delinquent had, in fact, returned updated authorizations. *Appellant Appendix 1E* at p. 45. Many authorizations had been rejected for not having been printed in 14 point font, a request which, in addition to being unnecessary, had not even been explicitly requested. *Appellant Appendix 1E* at p. 45. Despite these deficiencies – and failing to address them beyond noting that "Plaintiffs have responded" – the district court granted the motion and provided one month for the designated plaintiffs to provide updated medical authorizations. *Appellant Appendix 1F* at p. 49.

Appellees filed another motion to dismiss a list of actions based on the failure to provide medical authorizations on May 11, 2010. *Appellant Appendix 1G* at p. 51, which was copied to the Steering Committee and plaintiffs' liaison counsel. That motion was denied without prejudice on May 12, 2010. *Appellant Appendix 1H* at p. 57. A second motion was filed on May 20, 2010, *Appellant Appendix 1I* at p. 59, which was also copied to the Steering Committee and plaintiffs' liaison counsel. That motion was dismissed as moot because the motion was filed in the individual cases. *Appellant Appendix 1J* at p. 65.

Apparently unaware that the motion had been dismissed, Plaintiff Janet Green filed a response to Appellees' motion to dismiss. *Appellant Appendix 1K* at p. 66.

18

In that motion, Green made clear that Appellees' conduct was not isolated. Even when interacting with individual plaintiffs, Appellees exerted only nominal effort to obtain an updated medical authorization; that is, in the case of Ms. Green, Appellees did not attempt to call counsel to request an updated authorization. The letter Appellees sent was dated April 30, 1010, but not postmarked until May 4, 2010, and not received until days later because of an incorrectly-printed mailing address. *Appellant Appendix 1K* at p. 66.

This dueling did not go unnoticed by the district court, which issued an order on August 2, 2012, directing, colloquially but sternly, the Steering Committee to inform remaining Plaintiffs' counsel of the court's "testiness." *Appellant Appendix 1L* at p. 76. This information was not relayed to Appellant.

A few months later, the district court filed an order regarding updated medical authorizations that pertained to Appellant. *Appellant Appendix 2C* at p. 83. Unaware of the order for the reasons set forth above, Appellant did not respond. On January 8, 2013, Appellees filed a motion to dismiss via CM/ECF that Appellants did not receive. *Appellant Appendix 2E* at p. 90. The motion was also served by e-mail only to plaintiffs' liaison counsel, who did not fulfill his duty to notify Appellant. The motion was not served as required by *F.R.C.P.* 5 on Appellant. The motion to dismiss was granted on January 28, 2013. *Appellant Appendix 2F* at p. 95.

19

On October 22, 2013, Appellant filed a motion to vacate the district court's dismissal to which Appellee replied shortly thereafter. *Appellant Appendix 2G-J* at pp. 96-214. The district court, in a 2-page order, denied Appellant's motion to vacate. *Appellant Appendix 2K* at pp. 220-21.

In that Order, the district court quoted from Doc. 3 of Appellant's docket, *Appellant Appendix 2B* at p. 79, which directed counsel to register for CM/ECF in the Eastern District of Arkansas. That failure to register was not willful, but merely a misunderstanding of the CM/ECF registration requirements. Because Appellant had been registered in the transferor district in New York, and because the undersigned was listed on the docket sheet, Appellant operated under the mistaken belief that no further case-specific registration in a separate district was necessary. Though mistaken, this belief was not entirely unreasonable considering the centralized PACER system and an entry in the initial Practice and Procedure order to that effect. *Appellant's Appendix 1A*, para 3.1 at p. 4. Furthermore, the language cited by the court was contained within a memorandum from the clerk, but the district court did not mention language contained within the court order that accompanied the memorandum:

> in individual tag-along cases where the lawyers have not yet
> registered on CM-ECF in the Eastern District of Arkansas, the Clerk
> of the Court will send notices of electronic filing to liaison counsel,
> who must deliver the notices to the parties who did not receive the
> notices electronically.

20

[*Appellant Appendix 2B* at pp. 80-81.]

Appellant was not served with a copy of that order, or any other, by plaintiffs' liaison counsel, a fact which the district court did not consider.

Furthermore, for all of the convenience and efficiency that CM/ECF and PACER have infused into our federal courts, they have not eliminated human error that can result in filing quirks. For example, even after plaintiffs' liaison counsel had been replaced and specific mention of that fact by Appellant in its Motion to vacate dismissal , defense counsel served its opposition upon outgoing plaintiffs' liaison counsel.

Nor is our judiciary immune to human error. After this appeal had been filed, an Order was filed in this appeal on December 20, 2013, alleging that Appellant had failed to pay the requisite filing fee and directing Appellant to show cause why the appeal should not be dismissed for failure to prosecute. *District Court Doc. 17.*

In fact, the fee had been timely paid on November 27, 2013. However, Appellant's communication with the Court clerk revealed that notification of timely payment, *District Court Doc. 16*, had not been transmitted from the district court, nor had payment status been independently verified. Upon being informed by Appellant that payment had been timely filed, the Court Clerk promptly dissolved the Order to Show Cause. *District Court Doc 18*.

21

Some simple lessons can be gleaned from these filing quirks. First, a simple phone call or letter can conserve court resources, just as it would have had defense counsel done so for a missing medical authorization. Second, proper service insures the time-honored practice of notice so that the spirit and the letter of the law can be followed and matters resolved on the merits. Third, when technology is involved, accidents do happen.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO CONSIDER WHETHER APPELLANT DEMONSTRATED EXCUSABLE NEGLECT IN THE MOTION TO VACATE

*F.R.C.P.* 60(b) motions are grounded in equity and exist "to prevent the judgment from becoming a vehicle of injustice." Id. (citation omitted). "The rule attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." *Harley*, 413 F.3d at 870 (citation omitted). One of the provisions designed to grant relief contemplates situations where the actions underlying dismissal can be attributed to excusable neglect. *F.R.C.P.* 60(b)(6).

Excusable neglect is an "elastic concept" that empowers courts to accept, "where appropriate, ... late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 388 (1993). The determination of whether neglect is excusable "is at bottom an equitable one,

22

taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010).

"Neglect" must be given its ordinary meaning, which would include "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388. The Supreme Court has explained that for *F.R.C.P.* 60(b) purposes, "excusable neglect" includes "situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394.

In *Pioneer*, the Supreme Court set forth five factors for determining whether neglect is excusable: "the danger of prejudice to [the non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. *Pioneer* "focused entirely on 'out-of-time' filings" and "stands for the proposition that a district court should consider the five factors ... in cases where procedural default has prevented the court from considering the true merits of a party's claim." *Jinks v. Allied Signal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001).

The *Pioneer* factors were not considered by the district court. Had they been considered, there is evidence in the record to support Appellant's position. There

Appellate Case: 13-3556    Page: 28    Date Filed: 01/08/2014 Entry ID: 4111771

was little danger of prejudice to Appellees, as the only item requested was an updated medical authorization that had already been promptly provided – upon request mailed directly to Appellant – in 2010. *Appellant Appendix, 2G* at p. 171. The length of the delay was only several months, which was insignificant in light of the litigation's overall length. The reason for the delay, discussed at length above, reveals no bad faith by Appellant and factors that were not only beyond Appellant's control, but designed to delay and frustrate the legal process. As soon as Appellant learned of Appellees' request for an updated authorization, the authorization was promptly requested and attached to Plaintiff's motion to vacate. *Appellant Appendix, 2G* at p. 196.

Instead of considering these factors, the district court, understandably frustrated by actions taken – and not taken – in other cases and by other counsel to delay decade-long litigation, summarily dismissed Plaintiff's case without adequate consideration of either the *Pioneer* factors or the evidence. The district court itself acknowledges that it could "find no certificate of service on the docket sheet," but nevertheless assumed that Plaintiff received notice of the events leading to dismissal. There was no evidence offered by the Appellee to support that assertion, including in Appellees' opposition to Appellant's motion to vacate the dismissal, a review of which will show that no authority was cited beyond an entirely different matter, *Hinton v. Wyeth*, with no citation included. *Appellant Appendix, 2E* at p.

Appellate Case: 13-3556     Page: 29     Date Filed: 01/08/2014 Entry ID: 4111771

207.  For these reasons, the district court's decision should be deemed an abuse of discretion because it was not an exercise of sound, reasonable, and legal decision-making skills. See, e.g. *Wilton v. Seven Falls Co.*, 515 US 277 (1995) and *General Electric Co. v. Joiner*, 522 US 136 (1997).

## IV.    CONCLUSION

Even without a satisfactory explanation, relief may be required where other equitable considerations weigh strongly in favor of setting aside a default judgment. *Union Pac. R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 783 (8th Cir. 2001); *Feeney v. AT & E, Inc.*, 472 F.3d 560, 563 (8th Cir. 2006). Here, Appellant is not requesting final judgment on the matter's ultimate merits, but merely an opportunity to have the matter fairly litigated and fully considered. A perfect storm of technological vagaries, miscommunication, and complex litigation should not keep Appellant, a breast cancer survivor seeking justice for her life-altering injuries, from her day in court.

Furthermore, a contrary finding will, in the name of judicial efficiency, vindicate "Rambo" litigation tactics calculated for dismissal rather than supporting adjudication on the merits. However, "…maintaining a bar that promotes civility and collegiality is in the public interest and greatly advances judicial efficiency: better 'to secure the just, speedy and inexpensive determination of every action and

25

proceeding.'" *Sahyers v. Prugh, Holliday & Karatinos*, P.L., 560 F.3d 1241, 1245 at n. 5 (11th Cir. 2009) (quoting *F.R.C.P.* 1).

Our system of justice can ill-afford to devote scarce resources to supervising matters that do not advance the resolution of the merits of a case; nor can justice long remain available to deserving litigants if the costs of litigation are fueled unnecessarily to the point of being prohibitive. *Dondi Props. Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284, 286 (N.D. Tex. 1988) (footnote omitted). No less an authority than Chief Justice Warren Burger has said that "disciplined behavior and civility…are the lubricants that prevent lawsuits from turning into combat." *The Necessity for Civility*, Address Before the American Law Institute (May 18, 1971).

This is a matter that could have been resolved through the exercise of professionalism. If Appellees' intent was truly to proceed in good faith with discovery, defense counsel could have easily notified Appellant by phone, mail, or e-mail – all of which were listed on the docket sheet – regarding missing authorization forms and the motion to dismiss. For all the convenience and benefits that technology has injected into legal practice, it cannot replace civility. Technology should serve the ends of efficiency, but not at the expense of justice.

26

WHEREFORE, Appellant respectfully requests this Court to vacate the

underlying dismissal and reinstate this matter to the civil docket for resolution on

the merits; or for such other relief as this Court deems just and proper.

Dated: New York, NY
      January 4, 2014

                                    Respectfully submitted,
                                    Kahn Gordon Timko & Rodriques, P.C.


                                    _____/s/_____
                                    By: Nicholas I. Timko
                                    Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE

1.  Appellant's brief complies with the type-volume limitations of *F.R.A.P.* 32(a)(7)(B) because this brief contains 5,745 words, as counted by Microsoft Word, excluding the parts of the brief exempted by *F.R.A.P.* 32(a)(7)(B)(iii) and this Court.

2.  Petitioner's brief complies with the typeface requirements of *F.R.A.P.* 32(a)(5) and the type style requirements of *F.R.A.P.* 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Times New Roman

Dated:  New York, N.Y.　　　　　　Kahn Gordon Timko Rodriques, P.C.
　　　　January 4, 2014


　　　　　　　　　　　　　　　　___/s/_____
　　　　　　　　　　　　　　　　By: Nicholas I. Timko
　　　　　　　　　　　　　　　　Attorneys for Appellant
　　　　　　　　　　　　　　　　20 Vesey St., Suite 300
　　　　　　　　　　　　　　　　New York, NY 10007
　　　　　　　　　　　　　　　　(212) 233-2040
　　　　　　　　　　　　　　　　nitimko@kgtrpc.com

28

# ANTI-VIRUS CERTIFICATION

I hereby certify that the electronic Portable Document Format (PDF) versions of Appellant's brief had been scanned for viruses utilizing Symantic Anti-Virus and that no viruses were detected.

Dated: New York, N.Y.        Kahn Gordon Timko Rodriques, P.C.
       January 4, 2014

                               ____/s/_____
                               By: Nicholas I. Timko
                               Attorneys for Appellant
                               20 Vesey St., Suite 300
                               New York, NY 10007
                               (212) 233-2040
                               nitimko@kgtrpc.com

Appellate Case: 13-3556    Page: 34    Date Filed: 01/08/2014 Entry ID: 4111771